# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>NOBILIS HEALTH CORP., *et al.*<br><br>                Debtors. | Chapter 7<br><br>Case No. 19-12264 (CTG)<br>(Jointly Administered) |
| ALFRED T. GIULIANO, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Nobilis Health Corp., *et al.*,<br><br>                Plaintiff,<br><br>v.<br><br>HARRY J. FLEMING; P. DAVID YOUNG; and BRANDON MORENO,<br><br>                Defendants. | Adv. Proc. No. 23-50486 (CTG)<br><br><br>**Related Adv. Docket Nos. 13, 14, 37** |

## REPLY IN SUPPORT OF DEFENDANTS HARRY J. FLEMING, P. DAVID YOUNG, AND BRANDON MORENO'S MOTION TO DISMISS AND ALTERNATIVE REQUEST FOR ABATEMENT

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801

**LYNN PINKER HURST & SCHWEGMANN, LLP**
Edward Jason Dennis (admitted *pro hac vice*)
Kent Krabill (admitted *pro hac vice*)
Leo Park (admitted *pro hac vice*)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

**PAUL HASTINGS LLP**
Paul R. Genender (admitted *pro hac vice*)
Jake Rutherford (admitted *pro hac vice*)
Marco Vasquez Jr. (admitted *pro hac vice*)
600 Travis Street, Fifty-Eighth Floor
Houston, Texas 77002
(713) 860-7300

**TABLE OF CONTENTS**

I. SUMMARY OF THE REPLY ........................................................................................ 1

II. ARGUMENT ................................................................................................................. 2

    A. Plaintiff Cannot Allege A Claim Against Defendants As Assignees Without Inequitable Conduct By BBVA. ............................................................. 3

    B. Plaintiff Fails to Plausibly Allege Injury to Creditors or an Unfair Advantage to Defendants. ...................................................................................... 6

    C. Plaintiff Concedes that the Complaint Should Be Dismissed as Moot if the Court Grants Defendants' Pending Motions for Summary Judgment. ............. 9

III. CONCLUSION ............................................................................................................... 9

# TABLE OF AUTHORITIES

### Cases

333 B.R. 205 (Bankr. S.D.N.Y. 2005) ................................................................................. 4

*Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998) .................................................................................................................... 5

*In re Arctic Glacier Int'l, Inc.*, 255 F. Supp. 3d 534 (D. Del. 2017), *aff'd*, 901 F.3d 162 (3d Cir. 2018) ................................................................................................................................... 3

*In re Enron Corp.*, 379 B.R. 425 (S.D.N.Y. 2007) ............................................................. 4

*In re Firestar Diamond, Inc.*, 627 B.R. 804 (Bankr. S.D.N.Y. 2021) (citing *KB Toys II*, 736 F.3d at 252) ............................................................................................................................ 3

*In re KB Toys Inc.*, 736 F.3d 247 (3d Cir. 2013) ("*KB Toys II*") ....................................... 3

*In re KB Toys, Inc.*, 470 B.R. 331, 337 (Bankr. D. Del. 2012) ("*KB Toys I*") ................... 3

*In re Kreisler*, 546 F.3d 863 (7th Cir. 2008) ..................................................................... 8

*In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 71 (Bankr. D. Del. 2002) ........................... 7

*In re TPC Grp. Inc.*, No. 22-10493 (CTG), 2022 WL 2498751, at *7 (Bankr. D. Del. July 6, 2022) (Goldblatt, J.) (emphasis added) ............................................................................ 6

*In re Winstar Commc'ns*, 554 F.3d at 411 ......................................................................... 6

*In re Winstar Commc'ns, Inc.*, 554 F.3d 382 (3d Cir. 2009) .............................................. 2

*In re Zohar III, Corp.*, 639 B.R. 73, 90 (Bankr. D. Del.), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022), *appeal dismissed sub nom. In re Zohar III, Corp.*, No. 22-2695, 2022 WL 19038638 (3d Cir. Nov. 10, 2022) ..................................................................................................... 3

*KB Toys I*, 470 B.R. 331 at 335 ......................................................................................... 3

*See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 7

*See In re Winstar Commc'ns*, 554 F.3d at 411 ........................................................................... 8

*United States v. State St. Bank & Tr. Co.*, 520 B.R. 29 (Bankr. D. Del. 2014) (quoting *In re Lifschultz Fast Freight*, 132 F.3d 339, 347 (7th Cir. 1997)......................................................... 3

Statutes

11 U.S.C. § 510.................................................................................................................... 4, 5

11 U.S.C. § 510(c) ..................................................................................................................... 2

11 U.S.C. § 510(c)(1)................................................................................................................. 2

Rules

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ................................................................... 1

Defendants respectfully file this Reply in Support of their Motion to Dismiss the Complaint and request that the Court dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I. SUMMARY OF THE REPLY

Plaintiff's entire theory underlying his equitable subordination claim is fundamentally flawed as a matter of law.

***First***, the Third Circuit has already decided that an assignee of a bankruptcy claim stands in the shoes of the original claimant assignor. As that court noted, the statutory text refers to "claim" not claimant (which is the same for both 11 U.S.C. § 502 and § 510). Therefore, allegations against an assignee of inequitable conduct unrelated to the transfer from the assignor would be irrelevant. Equitable subordination must be based on the conduct of the original assignor. Nonetheless, it does not matter if the issue is framed in terms of claims or claimants. The original claimant's conduct can be viewed as attaching to the claim and transferring with the claim to the assignee. Or the original claimant's conduct may be viewed as attaching to that claimant, in whose shoes the assignee stands. Under either characterization, it is the ***original claimant's*** conduct at issue. Defendants were assigned their claims from BBVA. Regardless of Plaintiff's allegations about Defendants' alleged conduct prior to the bankruptcy, there are no allegations of pre-petition misconduct against BBVA or in connection with BBVA's assignment to Defendants. Therefore, the claims cannot be subordinated under Section 510 as a matter of law.

***Second***, even if these claims could be subordinated, Plaintiff fails to allege how Defendants harmed other creditors or benefited themselves. Defendants purportedly engaged in inequitable

---

[1] Defendants incorporate the defined terms in their Memorandum of Law in Support of Motion to Dismiss [Adv. Docket No. 14] (the "**Opening Brief**").

1

conduct by "cooking the books" at Nobilis to present inflated financial statements in 2017 and 2018. Even accepting this allegation as true—and it is not—the Complaint fails to explain how this alleged misconduct harmed other creditors or benefited Defendants as creditors as compared to those creditors' position if BBVA were holding the same claims. Instead, Plaintiff admits that Defendants obtained their secured creditor position through a separate assignment from BBVA and there is no alleged misconduct with respect to this assignment. Plaintiff cannot simply reiterate its pre-petition fiduciary duty claims and proclaim that they justify subordination of a post-petition transfer that does not affect the treatment of any creditors other than BBVA, which has agreed to that assignment.

***Third***, Plaintiff agrees with Defendants that if Defendants prevail on their Motions for Summary Judgment in the Breach of Fiduciary Duty Action, his equitable subordination claim is moot. Because Defendants should prevail on those Motions for Summary Judgment for the reasons stated in that briefing, this Complaint should also be dismissed.

## II.    ARGUMENT

A bankruptcy "court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim." 11 U.S.C. § 510(c)(1). Such a remedy requires inequitable conduct that results in an injury to creditors of debtor or that confers an unfair advantage on a claimant. Importantly, the remedy of equitable subordination must be applied in a manner that is consistent with the provisions of the Bankruptcy Code. *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 411 (3d Cir. 2009); *see also* 11 U.S.C. § 510(c). "Equitable subordination is a 'drastic' and 'unusual' remedy because it means 'that a court has chosen to disregard an otherwise legally valid transaction.'" *United States v. State St. Bank & Tr. Co.*, 520 B.R. 29, 86 (Bankr. D. Del. 2014) (quoting *In re Lifschultz Fast Freight*,

2

132 F.3d 339, 347 (7th Cir. 1997)). Accordingly, it "should only be applied in limited circumstances." *In re Zohar III, Corp.*, 639 B.R. 73, 90 (Bankr. D. Del.), *aff'd*, 620 F. Supp. 3d 147 (D. Del. 2022), *appeal dismissed sub nom. In re Zohar III, Corp.*, No. 22-2695, 2022 WL 19038638 (3d Cir. Nov. 10, 2022).

A.  **Plaintiff Cannot Allege A Claim Against Defendants As Assignees Without Inequitable Conduct By BBVA.**

Defendants' Motion to Dismiss relies on a simple, uncontroversial proposition. Under federal bankruptcy law, an assignee of a claim stands in the shoes of the assignor. *In re KB Toys, Inc.*, 470 B.R. 331, 337 (Bankr. D. Del. 2012) ("*KB Toys I*"). Plaintiff does not dispute this principle. [*See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss [Adv. Docket No. 27] (the "**Response**") at 7–11]. Nor can he. In *KB Toys I*, the court explained that "a claim in the hands of a transferee has the same rights and disabilities as the claim had in the hands of the original claimant. Disabilities attach to and travel with the claim." *KB Toys I*, 470 B.R. 331 at 335. The Third Circuit agreed, holding "[b]ecause the statute focuses on claims—and not claimants—claims that are disallowable under § 502(d) must be disallowed no matter who holds them." *In re KB Toys Inc.*, 736 F.3d 247, 252 (3d Cir. 2013) ("*KB Toys II*"). Other courts have adopted that reasoning, explaining that "[f]or the reasons articulated by the bankruptcy court and the Court of Appeals for the Third Circuit in *KB Toys*, . . . the text of the statute focuses on claims, not claimants, and 'operates to render a category of claims disallowable—those that belonged to an entity who had received an avoidable transfer.'" *In re Firestar Diamond, Inc.*, 627 B.R. 804, 808 (Bankr. S.D.N.Y. 2021) (citing *KB Toys II*, 736 F.3d at 252). Consistently, this District and Circuit have noted that a claim transfer results in "a substitution of parties with no change in the nature of the claim." *In re Arctic Glacier Int'l, Inc.*, 255 F. Supp. 3d 534, 558 (D. Del. 2017), *aff'd*, 901 F.3d 162 (3d Cir. 2018).

3

Courts outside of the Third Circuit have specifically applied this principle in the context of equitable subordination. As explained in Defendants' Opening Brief [Opening Brief at 10–11], the court in *In re Enron Corp.* ("*Enron I*") held, after extensive analysis, that "case law has affirmed the principle that under a bankruptcy proceeding, '[a]n assignee stands in the shoes of the assignor and subject to all equities against the assignor.'" 333 B.R. 205, 223 (Bankr. S.D.N.Y. 2005). Thus, the transferee steps into the shoes of the transferor. It is the latter's conduct that dictates whether a claim should be subordinated. And the reason is that the statute focuses on the "claim" and not the "claimant." Like, Section 502, the language of Section 510 also refers to claims: "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed ***claim*** to all or part of another allowed ***claim***…" 11 U.S.C. § 510 (emphasis added).

Plaintiff's efforts to refute the relevance of *Enron I* with reference to the related case of *In re Enron Corp.*, 379 B.R. 425 (S.D.N.Y. 2007) ("*Enron II*") are unavailing. As Plaintiff notes [Response at 8, n. 7], the court in *Enron II* held that equitable subordination of a transferred claim is based on the conduct of the claimant. 379 B.R. at 441–42. What Plaintiff fails to mention is that that court was referring to the ***original claimant***. *Id.* Thus, *Enron I* and *Enron II* are not inconsistent for purposes of Defendants' Motion to Dismiss. Whether an assigned claim is subject to subordination is based on whether the original claimant's conduct tainted that claim. Such taint transfers with the claim to the assignee, who stands in the shoes of the assignor.[2] Thus, it is inconsequential whether equitable subordination technically applies to a claim or a claimant. In the context of an assigned claim, the relevant claimant is the ***original claimant***, in whose shoes

---

[2] The only reason the court in *Enron II* needed to distinguish between wrongful claims and claimants was to explain that a purchaser for value—rather than a mere assignee—does not acquire the taint associated with a claim. 379 B.R. at 441–42. When selling a claim, any inequitable subordination remains with the original claimant. *Id.* Moreover, the court in *KB Toys II*—which is binding authority here—specifically disagreed with *Enron II*'s reasoning that focused on claimants rather than claims and highlighted that *Enron II*'s reliance on state law was "problematic for several reasons." 736 F.3d at 254 n.11.

4

the assignee stands. Because the assignee is not a separate claimant, the Court can and must only look at the original claimant's impact on the claim to determine if it should be subordinated.

Therefore, applying this simple principle—that an assignee of a claim stands in the shoes of the assignor—Defendants stand in the shoes of BBVA. Because Plaintiff does not allege that BBVA engaged in any inequitable conduct either pre-petition or in connection with the transfer, Plaintiff fails to state a claim that those claims are subject to equitable subordination.

Plaintiff cannot identify any applicable Third Circuit case law to the contrary.[3] At best, Plaintiff cites *Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998) ("*Citicorp I*") for the proposition that a court may subordinate a "transferee, without reference to the original claimant's conduct." [Response at 7 (emphasis omitted)]. As Plaintiff admits, however, *Citicorp I* subordinated a claim that was acquired directly through the inequitable misconduct at issue. [*Id.* at 7 & n.6]. Specifically, one of the debtor's current directors bought unsecured claims at a discount post-petition. *Citicorp I*, 160 F.3d at 988-89. The misconduct is directly tied to the acquisition of the claim between the claimant and the assignee.[4]

However, there is no such wrongful conduct here. Plaintiff claims that Defendants acted inequitably by purportedly breaching their fiduciary duties and "cooking the books" pre-petition

---

[3] Plaintiff attempts to rely on *In re Breath of Life Home Med. Equip. & Respiratory Servs., Inc.*, No. 16-1930-RLM-7A, 2017 WL 1058261 (Bankr. S.D. Ind. Mar. 20, 2017)—an unpublished, out-of-circuit, district court opinion—to claim that a transferee's claim can be subordinated irrespective of the conduct of the transferor. [Response at 10]. However, that court was not bound by *KB Toys I* and *KB Toys II* and their requirement that an assignor of a claim stands in the shoes of the assignee. Nor did it address the application of that principle to subordination, including in *Enron I* and *Enron II*. Given that *KB Toys I* and *KB Toys II* are both directly applicable and binding on this Court, *In re Breath of Life Home Med. Equip. & Respiratory Servs., Inc.*, provides little support for Plaintiff.

[4] Notably, Plaintiff cites several cases relating to this same situation, where transferee's alleged wrongful conduct related directly to the acquisition of the claim from the claimant. *See In re LightSquared Inc.*, 511 B.R. 253, 352 (Bankr. S.D.N.Y. 2014) (equitably subordinating debt that was acquired through a breach of a credit agreement); *In re Fla. Bay Trading Co.*, 177 B.R. 374, 386 (Bankr. M.D. Fla. 1994) (describing that a loan wrongfully assigned to an insider was "tainted with a sufficient degree that under the principles of equity the claim acquired by the assignment should be subordinated").

5

[Complaint ¶¶ 40–43, 113, 131]. Even if true—which it is not—this pre-petition conduct is irrelevant to the assignment by BBVA of the claims. Defendants separately obtained their claims from BBVA post-petition through an assignment, and there are no allegations that Defendants did anything wrong in connection therewith.[5] [*Id.* ¶ 120].

Ultimately, it is undisputed that Plaintiff fails to allege any wrongful conduct by BBVA. Because Defendants stand in the shoes of the assignor BBVA — and because Plaintiff does not otherwise allege that Defendants acquired those claims wrongfully — Plaintiff fails to plausibly allege that there is inequitable conduct that could equitably subordinate Defendants' claims. As this Court has noted, "the robust secondary market for distressed syndicated debt, one that benefits buyers and sellers alike, ***depends on courts respecting the fact that the buyer of such debt acquires the same bundle of legal rights as were held by its predecessor***." *In re TPC Grp. Inc.*, No. 22-10493 (CTG), 2022 WL 2498751, at *7 (Bankr. D. Del. July 6, 2022) (Goldblatt, J.) (emphasis added).

Therefore, for this reason, Defendants' Motion to Dismiss should be granted.

**B.    Plaintiff Fails to Plausibly Allege Injury to Creditors or an Unfair Advantage to Defendants.**

Equitable subordination requires an injury to other creditors or that Defendants gained an unfair advantage as claimants. *In re Winstar Commc'ns*, 554 F.3d at 411. The goal of equitable subordination "is to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3d Cir.

---

[5] Again, the settlement was designed to prevent BBVA from potentially recovering for essentially the same allegations that it agreed to dismiss. [Opening Brief at 7]. Indeed, the other adversary proceeding involves the same alleged misconduct underlying the BBVA action—a change in the 365+AR policy. [*Id.* at 5–6]. Equitable subordination here would, in effect, set aside the settlement.

2003) (quoting *Burden v. United States*, 917 F.2d 115, 117 (3d Cir. 1990)). Thus, "the creditors that will benefit from the subordination of the claim must be the creditors that were injured by the inequitable conduct." *In re Mid-Am. Waste Sys., Inc.*, 284 B.R. 53, 71 (Bankr. D. Del. 2002).

While Plaintiff argues that he only needs to plead a "concrete harm" [Response at 11], the Complaint does not plausibly allege either who was harmed by the wrongful conduct or who will benefit from subordination. The Complaint goes on, at length, regarding Defendants' purported misconduct, but it fails to identify a single creditor harmed. The only allegations to which Plaintiff can cite are vague references to "innocent creditors" and "the public." [*Id.* at 11–12 (citing Complaint ¶¶ 91, 132)]. Such conclusory allegations are insufficient to state a claim plausibly. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, there are no allegations explaining how any injured creditors will benefit from subordination. Indeed, there are no allegations at all regarding any other claims or creditors in this bankruptcy. Without these facts, Plaintiff cannot allege that subordination of Defendants' claims will benefit a harmed creditor.

This failure is especially problematic because the single creditor that Plaintiff does in fact identify is BBVA. BBVA is the only creditor alleged to have been harmed by the purported misconduct. [Complaint ¶ 93]. And BBVA is no longer a creditor in this bankruptcy proceeding entitled to any recovery from the proceeds of the Breach of Fiduciary Duty Action. [*Id.* ¶ 120]. Thus, rather than alleging that subordination would benefit creditors, the Complaint does the opposite. The only creditor that is alleged to have been harmed—BBVA—agreed to the transfer. The Seventh Circuit has rejected this entire theory in an analogous case, explaining "[e]quitable subordination is generally appropriate only if a creditor is guilty of misconduct that causes injury to the interests of other creditors. The debtors' formation of a corporation to purchase a secured claim against their own estates may have amounted to misconduct, but it did not harm the other

7

creditors, who were in the same position whether the original creditor or the debtors' corporation owned the secured claim." *In re Kreisler*, 546 F.3d 863, 865 (7th Cir. 2008). Accordingly, alleged harm to BBVA, which voluntarily transferred its secured claim to Defendants, will not support this second element because treatment of other creditors under the Bankruptcy Code is unaffected whether BBVA or Defendants hold that secured claim. See id.

Moreover, Plaintiff's allegations that Defendants benefited are equally barren of factual support. Plaintiff claims that Defendants "will participate in an oversized way in the recoveries generated by their own wrongdoing." [*Id.* ¶ 124]. This argument, again, conflates Defendants' actual purported pre-petition wrongdoing with their separate acquisition of the claims at issue. Defendants' purportedly inequitable conduct was their alleged breach of fiduciary duty. [*Id.* ¶ 130]. This conduct did not give Defendants any rights as a creditor. Thus, the breach of fiduciary duty cannot be the basis to allege that Defendants received an advantage.[6] *See In re Winstar Commc'ns*, 554 F.3d at 411 (describing that equitable subordination requires that "[t]he **misconduct** must have . . . conferred an unfair advantage on the claimant") (brackets in original, citation omitted, and emphasis added).

Instead, Defendants obtained their claims through a separate, independent assignment from BBVA. Plaintiff even admits as much. [*See* Complaint ¶ 123 ("***Utilizing the Assignment***, Defendants have gained and/or seek to gain an unfair advantage over Debtors' other creditors....") (emphasis added)]. This acquisition may have given Defendants an advantage over other (unidentified) creditors, but there are no allegations that Defendants or BBVA did anything

---

[6] The lack of any personal advantage to Defendants further distinguishes this case from *In re Breath of Life Home Med. Equip. & Respiratory Servs., Inc.* There, the court specifically emphasized that it was subordinating the transferred claims because the transferee had, among other things, "looted" the debtor to gain an unfair position over other creditors. 2017 WL 1058261, at *6. The court emphasized that it was by virtue of this "unfairness to other creditors" that the transferee's claims could be subordinated. *Id.*

wrongful in connection with this assignment itself.[7] Given the flawed reasoning underlying Plaintiff's factual allegations, he is once again left with only conclusory assertions that Defendants have obtained a benefit [*Id.* ¶ 132], and those conclusory assertions cannot provide a basis for any claim.

Accordingly, Plaintiff does not plausibly allege that Defendants' purportedly inequitable conduct injured other creditors or unfairly benefited Defendants as creditors. Therefore, the Complaint fails to state a claim for equitable subordination as a matter of law requiring dismissal.

### C.    Plaintiff Concedes that the Complaint Should Be Dismissed as Moot if the Court Grants Defendants' Pending Motions for Summary Judgment.

Plaintiff agrees in his Response that if Defendants prevail on their Motions for Summary Judgment in the Breach of Fiduciary Duty Action, the Complaint will be moot. [Response at 13 n.11]. Accordingly, based on the merits of those Motions for Summary Judgment, the Complaint should also be dismissed as moot.

### III.    CONCLUSION

For the foregoing reasons, and those in the Opening Brief, Plaintiff cannot plausibly state a claim for the drastic and unusual remedy of equitable subordination. Therefore, Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety and dismiss the Complaint with prejudice.

---

[7] To hold otherwise would allow subordination of a claim asserted by any claimant who committed any conceivable misconduct, even if wholly unrelated to the debtor, the creditors, or the bankruptcy proceeding. This is clearly contrary to the purpose of inequitable subordination, which is to address "injustice or unfairness to other creditors in terms of **bankruptcy results**." *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 407 (Bankr. D. Del. 2022) (emphasis added) (citation omitted).

| | |
|---|---|
| Dated: December 4, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>**CHIPMAN BROWN CICERO & COLE, LLP**<br><br>*/s/ Mark L. Desgrosseilliers*<br>Mark L. Desgrosseilliers (No. 4083)<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware 19801<br>Telephone: (302) 295-0191<br>Facsimile: (302) 295-0199<br>Email:   desgross@chipmanbrown.com<br><br>—and—<br><br>**LYNN PINKER HURST & SCHWEGMANN, LLP**<br>Edward Jason Dennis (admitted *pro hac vice*)<br>Kent Krabill (admitted *pro hac vice*)<br>Leo Park (admitted *pro hac vice*)<br>2100 Ross Avenue, Suite 2700<br>Dallas, Texas 75201<br>Telephone:     (214) 981-3800<br>Facsimile:      (214) 981-3839<br>Email:   jdennis@lynnllp.com<br>            kkrabill@lynnllp.com<br>            lpark@lynnllp.com<br><br>*Attorneys for Defendants*<br><br>—and—<br><br>**PAUL HASTINGS LLP**<br>Paul R. Genender (admitted *pro hac vice*)<br>Jake R. Rutherford (admitted *pro hac vice*)<br>Marco Vasquez Jr. (admitted *pro hac vice*)<br>600 Travis Street, Fifty-Eighth Floor<br>Houston, Texas 77002<br>(713) 860-7300<br><br>Email:   paulgenender@paulhastings.com<br>            jakerutherford@paulhastings.com<br>            marcovasquezjr@paulhastings.com<br><br>*Attorneys for Defendant Harry J. Fleming* |